FILED
08/06/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 23, 2024

## STATE OF TENNESSEE v. DEMOND MAURICE BUCHANAN

**Appeal from the Criminal Court for Davidson County
Nos. 2015-D-2356, 2016-B-1103, 2016-C-1352 Angelita Blackshear Dalton, Judge**

_____

### No. M2023-01232-CCA-R3-CD

_____

Defendant, Demond Maurice Buchanan, appeals his resentencing resulting in a 52-year sentence, imposed following the trial court's revocation of his original 12-year community corrections sentence. Defendant argues the sentence is excessive and the trial court misapplied enhancement factors. Following our review of the entire record and the briefs of the parties, we affirm the judgments of the trial court in all respects, but, because Defendant's 12-year sentence for evading arrest in case number 2016-C-1352 is illegal, we modify the sentence to six years and remand for entry of a corrected judgment in that case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed and Remanded in Part**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which TOM GREENHOLTZ and MATTHEW J. WILSON, JJ., joined.

Jay Umerley, Nashville, Tennessee, for the appellant, Demond Maurice Buchanan.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Janice Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

*Factual and Procedural Background*

In November 2017, Defendant pleaded guilty as a Range II offender to one count of vehicular homicide in case number 2015-D-2356, for which he received a sentence of 12 years; one count of possession of 26 grams or more of cocaine with intent to sell or deliver

and one count of possession of heroin with intent to sell or deliver in case number 2016-B-1103, for which he received 12 years on each count; and one count of evading arrest in case number 2016-C-1352, for which he received a sentence of four years. Pursuant to the plea agreement, the trial court ran Defendant's sentences concurrently for a total effective sentence of 12 years and ordered the sentences to be served on community corrections.

The record reflects that in August 2018, a community corrections violation warrant was filed alleging that Defendant was arrested for unlawful use of drug paraphernalia, possession with intent to sell or deliver a Schedule I controlled substance, and sale of a Schedule I controlled substance. Defendant pleaded guilty to two counts of possession of a controlled substance and was sentenced to 11 months and 29 days on each count to be served consecutively. At a hearing on the violation warrant, the trial court found that Defendant had violated the conditions of community corrections and resentenced him to serve one year in confinement consecutive to his misdemeanor sentences. The court subsequently granted a motion to suspend the one-year sentence and reinstated Defendant to community corrections.

On March 15, 2021, a second violation warrant was filed alleging that Defendant had failed to report as directed and had absconded, that Defendant had been arrested on six new drug offenses, and that Defendant had failed to provide proof of employment. On October 20, 2022, an amended warrant was filed containing an additional allegation that Defendant had an outstanding arrest warrant for stalking. On April 5, 2023, a second amended warrant was filed alleging that Defendant had also been charged with three counts of aggravated assault with a deadly weapon against a first responder and one count of being a felon in possession of a handgun. A hearing was held on July 6, 2023, at which the following evidence was presented.

In April 2023, Detective Michael Quinn and Officer Dylan Bradley of the Metro Nashville Police Department ("MNPD") were conducting surveillance at the America's Best Value Inn on Rivergate Parkway as part of an ongoing narcotics investigation. Detective Quinn saw Defendant, driving a white Chevrolet Suburban or Tahoe, pull into the parking lot. Defendant was there for only a few minutes and left. Detective Quinn observed that Defendant's vehicle had "a fake temp tag[.]" Detective Quinn and Officer Bradley followed Defendant's vehicle to a "known narcotics house off Shakespeare." Defendant parked in front of the house, and an individual "went back and forth" between the house and Defendant's vehicle before Defendant left a few minutes later. Detective Quinn attempted to initiate a traffic stop of Defendant's vehicle, and Defendant "took off at a high rate of speed." Detective Quinn was driving an unmarked Ford Explorer that was "equipped with several blue lights[.]"

Officers deployed a spike strip, which caused Defendant's vehicle to "crash[] into a telephone pole." Detective Quinn and other officers present on the scene approached Defendant's vehicle. Defendant "cracked open his driver's side door." Detective Quinn "saw the muzzle to a pistol, and it was aimed right at [him], and then [he] just started getting hit with debris and the gunfire." Defendant "opened fire on [them]." Detective Quinn took cover behind his vehicle. He "was getting hit with glass and other shrapnel." Several rounds hit his vehicle, striking his windshield, radiator, and passenger side door. Detective Quinn acknowledged that some of the damage to his vehicle came from return fire by other officers. Defendant fired approximately 17 rounds and stopped only when he ran out of ammunition. He then "proned out on his stomach outside of his driver's side door [and] tossed the gun to the side." Officers arrested Defendant and searched his vehicle. They found "several bags of a white, powdery substance . . . [and] marijuana[.]" Detective Quinn's body cam footage was introduced as an exhibit to the hearing.

Community Corrections Officer Mirela Celebic testified that Defendant was placed under supervision in 2017 on a 12-year sentence. Officer Celebic said Defendant's violations included new criminal charges, absconding, and failure to provide proof of employment. Defendant's prior violations included new charges in August 2018, for which Defendant "served a year, day-for-day, and then in 2020 he was released" and placed back on community corrections supervision. Defendant was also required to complete a 28-day drug treatment program.

In February 2021, Defendant stopped reporting. Violation warrants were issued in March 2021 and October 2022, alleging that Defendant absconded, was arrested on new charges, and never provided proof of employment. In April 2023, another violation warrant was issued for the new charges stemming from his shooting at the police. A resentencing report, which included Defendant's numerous prior convictions, was admitted as an exhibit to the hearing.

Defendant testified on his own behalf. Defendant said he struggled with addiction to "[h]eroin, fentanyl, cocaine, [and] marijuana." Defendant testified that he completed a 90-day residential program after successfully completing the 28-day treatment program. Defendant provided paystubs to his community corrections officer when he worked at Waste Management, but he was unable to provide proof of employment when he did lawncare because he was self-employed. Defendant said between 2019 and 2021, he "lost everybody close around [him]." He testified his mother and father died, his son overdosed, his son's mother died from COVID, and his girlfriend was killed in a police shooting. Defendant relapsed "on Father's Day 2020." Defendant felt that he needed psychiatric help but was unable to find the resources he needed.

On cross-examination, Defendant acknowledged that he had a criminal history with convictions dating back to 1996. Defendant's convictions included drug possession and aggravated assault. Defendant was unsuccessful on probation because he received new charges. In 2001, he was convicted of aggravated assault and being a felon in possession of a weapon, which was reduced from the charge of attempted murder. Defendant served a 10-year sentence and was released in 2013. While Defendant was incarcerated, he was charged with contraband in a penal institution and was involved in a fight that resulted in someone being stabbed. In 2015, Defendant was convicted of vehicular homicide, and the following year, he was convicted of evading arrest in a motor vehicle and possession of cocaine.

Defendant's girlfriend, Victoria Johnson, testified that Defendant lived with her and their children when he was not incarcerated. She agreed that Defendant struggled with substance abuse. She said, "he does good for a while, but if something happens traumatic, sometimes he goes back to using."

In a written order revoking Defendant's community corrections sentence, the trial court accredited the testimony of Detective Quinn and Officer Bradley and found by a preponderance of the evidence that Defendant violated the conditions of his community corrections supervision and that resentencing was appropriate. "In resentencing the Defendant pursuant to Tennessee Code Annotated [section] 40-35-210, the [c]ourt consider[ed] the testimony and evidence presented at the community corrections violation hearing, the resentencing investigation report, the principles of sentencing, the nature of the underlying criminal conduct, and enhancing and mitigating factors."

The court determined that Defendant's prior convictions qualified him as a Range II multiple offender in case numbers 2015-D-2356 and 2016-B-1103 and a Range III persistent offender in case number 2016-C-1352. The court found no applicable mitigating factors. The court acknowledged "the detrimental impact of familial loss to death," but the court found that Defendant had "failed to make a sufficient showing of any mental health diagnosis or how such is causally linked to his conduct in the present cases." The court found four applicable enhancement factors: (1) Defendant had a previous history of criminal convictions or behavior in addition to those necessary to establish the range; (2) the offense involved more than one victim; (3) at the time of resentencing, Defendant failed to comply with the conditions of a sentence involving release into the community; and (4) Defendant had no hesitation about committing a crime when the risk to human life was high. *See* T.C.A. § 40-35-114(1), (3), (8), and (10).

The court stated that it was "extremely disturbed" by Defendant's criminal history and explained that it had "great trepidation about the Defendant's total disregard for authority and risks that his conduct caused to the community." The court resentenced

Defendant to 20 years for each of his Class B felony convictions in case numbers 2015-D-2356 and 2016-B-1103 and to 12 years for his Class E felony conviction in case number 2016-C-1352.

In determining the alignment of the sentences, the trial court found by a preponderance of the evidence that Defendant was an offender whose record of criminal activity was extensive, and that Defendant was a dangerous offender whose behavior indicated little or no regard to human life and no hesitation about committing a crime in which the risk to human life is high. *See* T.C.A. § 40-35-115(b)(1) and (4). The court found that Defendant "ha[d] demonstrated a pattern of behavior that place[d] others at risk of his conduct." Additionally, the court found that consecutive sentencing was appropriate and necessary to protect the public against further criminal conduct by Defendant and related to the severity of the offenses committed. Accordingly, the court ordered that Defendant serve his 20-year sentences in case number 2016-B-1103 concurrently with each other but consecutive to his 20-year sentence in case number 2016-D-2356 and his 12-year sentence in case number 2016-B-1103, for a total effective sentence of 52 years. Amended judgments were entered reflecting the same.

Lastly, the trial court ordered that Defendant serve his sentences incarcerated, finding that confinement was necessary to protect society by restraining a defendant with a long history of criminal conduct. The court noted Defendant's "extensive criminal record" and the "escalation of [Defendant]'s conduct, including the allegations of his conduct in the cases that form the basis of the instant violation." The court also found that confinement was necessary to avoid depreciating the seriousness of the offenses and that measures less restrictive than confinement had been unsuccessfully applied to Defendant.

*Analysis*

On appeal, Defendant does not challenge the factual basis supporting the trial court's revocation of his community corrections sentence but asserts the trial court abused its discretion in applying certain enhancement factors in resentencing him. Defendant argues that the trial court relied on the facts of the pending April 2023 charges in applying enhancement factors (3) and (10), finding that the offense involved more than one victim and that Defendant had no hesitation about committing a crime when the risk to human life was high, rather than the facts of Defendant's original convictions. The State argues that the trial court's misapplication of the two enhancement factors should not invalidate Defendant's sentence because the trial court resentenced Defendant in accordance with the purposes and principles of sentencing and the record supports the trial court's decision to impose the maximum sentences.

A trial court has statutory authority to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence. T.C.A. § 40-35-310, -311; *see State v. Harkins*, 811 S.W.2d 79, 82-83 (Tenn. 1991) (applying the probation revocation procedures contained in Tennessee Code Annotated section 40-35-311 to the revocation of a community corrections sentence). Proof of a violation must be sufficient to allow the trial court "to make a conscientious and intelligent judgment." *Id*. at 82. To overturn the trial court's revocation, the defendant must show the trial court abused its discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). "'A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party.'" *State v. Dagnan*, 641 S.W.3d 751, 758 (Tenn. 2022) (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)).

Following the revocation of a community corrections sentence, the trial court may "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." T.C.A. § 40-36-106(e)(4). If the trial court chooses to "resentence a defendant to a sentence more severe than the original, the trial court must conduct a sentencing hearing pursuant to the principles of the Sentencing Reform Act." *State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998) (citations omitted). The trial court must state on the record "specific findings of fact upon which application of the sentencing principles was based." T.C.A. § 40-35-209(c).

The purpose of the community corrections resentencing statute is to permit a trial court to impose a new sentence if the nature, circumstances, and frequency of the accused's violations warrant a different type of alternative sentence or incarceration. *State v. Ervin*, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996). "A sentence imposed pursuant to this statute may exceed the length of the sentence initially imposed by the trial court," *id*., and may include the consecutive alignment of sentences that were originally aligned concurrently, *see State v. Samuels*, 44 S.W.3d 489, 496 (Tenn. 2001).

Here, the trial court increased Defendant's sentences from an effective 12-year sentence to an effective 52-year sentence. The court conducted a resentencing hearing and considered the purposes and principles of sentencing. Importantly, although Defendant does not challenge the factual basis for the revocation, the preponderance of the evidence adduced at the revocation hearing established that Defendant committed several shockingly violent offenses that led to the revocation of his community corrections placement.

- 6 -

According to the original indictments, to which Defendant entered guilty pleas, in May 2015, Defendant drove a vehicle while intoxicated that resulted in the death of another. In March 2016, Defendant was found in possession of 26 grams or more of cocaine with intent to sell or deliver and possession of heroin with intent to sell or deliver. In September 2015, Defendant evaded police in a motor vehicle. Defendant violated the conditions of community corrections in 2018 when he was arrested for new drug charges. Defendant served time on the new charges and the violation and was reinstated to community corrections.

While on community corrections after his first violation, Defendant fled from MNPD at a high rate of speed on a public roadway while armed with a deadly weapon and then fired his handgun at police officers. Defendant fired approximately 17 rounds at the police, and several rounds struck Detective Quinn's vehicle. The trial court stated in its order, "[w]ithout prejudging the pending charges related to the April 4th shooting incident, the [c]ourt credits the testimony of Detective Quinn and Officer Bradley regarding the event."

The trial court's resentencing order complied with the terms of Tennessee Code Annotated section 40-35-210. The trial court considered the enhancement and mitigating factors when imposing the new sentences. Defendant argues that the court misapplied enhancement factors (3) and (10) because their application was based on the facts of the pending charges. We disagree because in our view, "the nature, circumstances, and frequency of" Defendant's violent behavior, after being placed on community corrections in November of 2017, warranted the new sentence imposed by the trial court. *See Ervin*, 939 S.W.2d at 583.

While the community correction statute "should not be used by trial courts for the sole and exclusive purpose of punishing an accused for violating provisions of a community corrections sentence," this Court has recognized that "facts which have developed between the time a defendant is initially sentenced to community corrections, and the time that the sentence is subsequently revoked, may be considered in applying enhancement factors and increasing a sentence." *State v. Yoc*, No. M2018-00585-CCA-R3-CD, 2020 WL 672293, at *6 (Tenn. Crim. App. Feb. 11, 2020) *no perm app filed*, (quoting *State v. Godwin*, No. W2001-00212-CCA-R3-CD, 2001 WL 1690198, at *6 (Tenn. Crim. App. Dec. 14, 2001), *perm. app. denied* (Tenn. May 6, 2002)); *see also State v. Cooper*, No. E2005-01243-CCA-R3-CD, 2006 WL 1134414, at *3-4 (Tenn. Crim. App. May 1, 2006) (affirming the trial court's application of enhancement factors based on the defendant's criminal behavior while on community corrections to increase a sentence upon a revocation of community corrections), *no perm. app. filed*. To be clear, the trial court did not abuse its discretion by resentencing Defendant relying on Defendant's April 2023 behavior with MNPD for application of enhancement factors (3) and (10). It matters not

that this behavior developed after Defendant's initial November 2017 sentence to community corrections.   Additionally, even if misapplied, the remaining factors applied by the court supported the length of the individual sentences.   "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012).

The record also supports the trial court's conclusion that consecutive sentences were warranted based upon Defendant's extensive criminal record and his status as a dangerous offender.   The court, noting Defendant's pattern of violent behavior and his "total disregard for authority," made the necessary findings under *State v. Wilkerson*, 905 S.W.2d 933, 937-39 (Tenn. 1995).   The resentencing report indicates that the defendant had multiple prior convictions for drug offenses, possession of a weapon by a convicted felon, evading arrest, and aggravated burglary.

Finally, as noted by the State in its brief, the judgment of conviction in case number 2016-C-1352 contained an illegality.  The maximum Range III sentence for an E felony is six years.  T.C.A. § 40-35-112(c)(5).  The trial court imposed a sentence of 12 years.  It is clear from the record that the trial court, in its discretion, which we have concluded the court did not abuse, imposed the maximum sentences in each of the counts upon resentencing.  We will not disturb the trial court's imposition of consecutive sentencing in case number 2016-C-1352, nor its imposition of the maximum sentence.  Accordingly, we reduce Defendant's sentence in that count to six years and remand for entry of a corrected judgment, resulting in an effective sentence of 46 years.

## CONCLUSION

For the foregoing reasons, the trial court's judgments are affirmed in all respects other than the illegal sentence in case number 2016-C-1352.  Defendant's sentence in that case is vacated and remanded to the Davidson County Criminal Court for entry of an amended judgment reflecting the maximum within-range sentence of six years.

_____
TIMOTHY L. EASTER, JUDGE